## Same Case on Application for Re-hearing.

*Muse* argued: In this case the appellee, *S. Bloom*, moves the court, for a rehearing upon the following grounds, viz:

1st. In the opinion the court delivered in this case, there is, in the humble opinion of the appellee's counsel, the following error of law, viz: The court have cited, in support of the opinion delivered, the Acts of 1843, chap. 145, p, 97—tutors of minors, residing and qualified in other States, are *expressly author-ized* to exercise their functions of tutors in this State, without being obliged even, to qualify here. In like manner (the court say) the right of executors, residing out of this State, to administer here is *conceded* by the Act of 1842, chap. 1142, p. 302.

May it please the Court, it is most humbly, and respectfully submitted, that it is by the *special legislation here referred to, that, a non-resident administration has, been provided for in the cases herein stated.* As *yet* no such legislation has author-ized a non-resident administration of *Estates*, in process of settlement before the courts of the State; and it would seem most extraordinary that the court should establish, by analogy, a non-resident administration of estates, purely and simply, in the absence of special legislation—when by the Civil Code, such administration is not only not provided for, but provided *against.* On *whom*, it is respectfully asked, could process be served in the administration of an estate represented by a non-resident administrator? Would it not be necessary to appoint a curator-*ad hoc* to represent the non-resident administrator!!

2d. It is respectfully suggested, that there is the following error of *fact* in the opinion delivered, viz: Although the applicants, *Foster* and *wife*, declare them-, selves to be residents of the State of Mississippi in their application, yet the. court *infers* that they *are present*, from the following facts, viz: 1st. "We infer-her presence in the State from the fact of her presentation of a petition *in her-*

*own name*, and her offer to qualify personally, as well as from a statement made by the judge in his reasons for refusing a new trial, to the effect that Mr. *Foster* her husband, acted jointly in her application, and was present *at the trial*." May it please the court, there is nothing, in the opinion of defendant's counsel, in the form in which this non-resident has presented her petition to the court, which distinguishes it from the multitude of cases in which non-resident litigants appear in our courts through their *attorneys at law*. Her *attorney's* name, and *not* her *own* name is affixed to the petition. To "*infer*" the *presence* in the State of a *declared* non-resident, would be, in the poor judgment of appellant's counsel, a most *violent* presumption, and would doubtless people the State with multitudes of litigants, whose feet have never trod the soil of Louisiana. As to the fact, that *Foster*, the husband, "was at the trial," or in the courthouse, on the day of the trial, it is humbly submitted that *nothing* could be less conclusive of a *presence in the* State in the sense of the code than such a fact, for there is nothing more common or reasonable, than that a non-resident litigant, being in reach of the courthouse, should be present at the trial.

It is humbly, and most seriously submitted, that there was nothing before the court of the first instance, either in the trial on the merits, or on the trial of the motion for a new trial, on which the court of the first instance could have rendered a different judgment. All that was *done or offered* to be done was, solely and exclusively, the actings and doings of an *attorney at law*. No special agency or procuration was exhibited from the applicants, neither before nor after the trial. *All! all!* was purely and simply the work of an attorney at law.

SPOFFORD, J.   The expression "present in the State," found in Art. 1035 of the Civil Code, and the word "present" in Art. 1114 seem to have been chosen *ex industriâ*, and by way of contrast to the common phrase "domiciliated in the State."

This is rendered more probable by a reference to a statute antecedent to the Code, which provided "that all curators to vacant estates and estates *ab intestato* shall be appointed in the parish where the deceased last permanently resided : *Provided*, however, that the said persons *have a domicil within the State*." Act March 22nd, 1822, Sec, 1, (Sess. Acts, p. 66.)

By the Code of 1825, the beneficiary heirs were required to be placed in the administration, if they are of age, and *present* or *represented* in the State.

This presence is required, because, otherwise, they could not take the oath and give the bond before the proper parish officer, within ten days from their appointment. Sess. Acts, 1842, p. 302.

By complying with these formalities, they subject themselves personally to the jurisdiction of the court.

Like administrators domiciliated in the State, they may absent themselves for a time, on the condition that they leave their general and special power of attorney with some person residing in the parish or in an adjoining parish, to represent them in all the acts of their administration, and, before their departure, deposit an authentic copy of such power of attorney in the office of Recorder of Mortgages of the parish. Sess. Acts 1847, p. 115.

As it may be inferred from the record in this case, that the beneficiary heir was present, and as she cannot qualify without being present, in the sense of the Code, no injury will result from her appointment as administratrix, subject, of course, to a compliance, on her part, with all the requirements of the law.

Re-hearing refused.